Clyde Hutchins, Bar No. 6-3549
Harmony Law, LLC
155 E. Boardwalk Drive, Suite 400
Fort Collins, CO 80525
Telephone: 970-488-1857
hutchins@harmony.law
Attorney for Plaintiff



# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| ZACHARY LEBO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-154-NDF |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff, Zachary Lebo, by and through the undersigned counsel, and brings his cause of action against Defendant, NAVIENT SOLUTIONS, LLC, and in support thereof alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (TCPA) and the tort of Invasion of Privacy - Intrusion upon Seclusion.

## INTRODUCTION

1.      The TCPA was enacted to prevent companies like NAVIENT SOLUTIONS, LLC from invading American citizen's privacy and to prevent abusive, intrusive and unwanted "robo-calls."

2.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner

at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1255-56 (11th Cir. 2014).

3.     According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones, Federal Communications Commission*, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

4.     Jurisdiction for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, as this action involves violations of the TCPA. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012). The Court has supplemental jurisdiction over Plaintiff's state law claim for the tort of invasion of privacy - intrusion of seclusion under 28 U.S.C. § 1367.

5.     The alleged violations described herein occurred in Albany County, Wyoming. Accordingly, venue is appropriate with this Court under 28 U.S.C.

§1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

6.      Defendant conducts business in the State of Wyoming and made the violating calls to Plaintiff's cellular telephone in Wyoming. As such, personal jurisdiction is established.

## FACTUAL ALLEGATIONS

7.      Plaintiff is a natural person, residing in Albany County, Wyoming.

8.      Plaintiff is the "called party" under 47 U.S.C. § 227.

9.      Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

10.      Defendant, NAVIENT SOLUTIONS, LLC, is a limited liability company formed under Delaware law with its principal place of business located at 2001 Edmund Halley Drive, Reston, VA 20191.

11.      Defendant is a "person" as defined by 47 U.S.C. § 153(39).

12.      At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, successors, assigns, principals, and representatives.

13.      Defendant called Plaintiff approximately one hundred (100) times from June 1, 2017 through August, 2017.

14.      Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using

a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

15.    Plaintiff will testify that he knew Defendant was making autodialer calls to his cellular telephone because of the vast number of calls he received and because every time he answered, there was never a person on the line right away. The pause was sometimes brief, but also sometimes as much as 5 seconds or more. If he did not say anything, the call would terminate after a few seconds. Even when he did say something, it would not always transfer him to a person, sometimes hanging up instead.

16.    Defendant has a regular practice of utilizing an "automatic telephone dialing system" when communicating with persons in the course of servicing loans.

17.    Plaintiff is the subscriber, regular user and carrier of cellular telephone number (626) ***-0379, has been continuously since at least 2012, and was the called party and recipient of Defendant's calls.

18.    Beginning on or about June 1, 2017, Defendant began bombarding Plaintiff's cellular telephone (626) ***-0379 with calls in an attempt to collect on a debt allegedly owed by a "Justine Sulia."

19.    Defendant did not have Plaintiff's express consent to call Plaintiff's cellular telephone (626) ***-0379 in an attempt to collect on a debt. All of Defendant's calls to Plaintiff seeking to collect on a debt were made in violation of the TCPA.

20.    The autodialer calls from Defendant came from telephone numbers including but not limited to (856) 242-2502, (856) 242-2501, (765) 637-0791, (703) 439-1080, (703) 439-1079, (615) 432-4230, (570) 904-8747, (512) 354-2001, (386) 269-0326, (317) 550-5589, and (302) 261-5532, and when those numbers are called a pre-recorded voice answers, stating, "Thank you for calling Navient."

21.    On or about June 20, 2017, Plaintiff received a call from Defendant and spoke with an agent of Defendant. Defendant's agent stated that the agent was looking for a "Justine Sulia." Plaintiff told Defendant's agent that he was not the person that Defendant was seeking to contact and that the called number was not Ms. Sulia's number. Defendant's agent also asked for Ms. Sulia's contact information.

22.    Plaintiff told Defendant to stop calling him during a telephone call that Defendant initiated on or about June 22, 2017. During the phone conversation, Plaintiff explicitly revoked any previously perceived expressed consent Defendant may have believed it had for placement of telephone calls to Plaintiff's cellular telephone by the use of an automatic telephone dialing system or artificial voice or prerecorded message.

23.    Each call Defendant made to the Plaintiff's cellular telephone after the said June 22, 2017 call was done so without the "express permission" of the Plaintiff and in violation of the TCPA.

24.    Plaintiff also told Defendant to stop calling his telephone number during telephone calls on various other occasions between June 1, 2017 and August 3, 2017.

25.     Despite Plaintiff informing Defendant to stop calling, the Defendant's

autodialer calls to Plaintiff's cellular phone continued after June 22, 2017. Plaintiff made

a non-exclusive log of approximately one hundred (100) calls he received from the

Defendant between June 1, 2017 and August 3, 2017, including but not limited to

receiving four and five calls a day at various times, sometimes within 10 minutes of each

other, on the following dates:

- June 20, 2017 (x4)
- June 22, 2017 (x4)
- June 23, 2017 (x4)
- June 27, 2017 (x4)
- June 29, 2017 (x4)
- June 30, 3017 (x5)
- July 5, 2017 (x4)
- July 6, 2017 (x5)
- July 10, 2017 (x5)
- July 11, 2017 (x4)
- July 12, 2017 (x4)
- July 13, 2017 (x4)
- July 17, 2017 (x4)
- July 18, 2017 (x4)
- July 19, 2017 (x4)
- July 20, 2017 (x4)
- July 24, 2017 (x4)
- July 25, 2017 (x4)
- July 27, 2017 (x4)
- August 2, 2017 (x4)

26.     Not one of Defendant's telephone calls placed to Plaintiff were for

"emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

27.     Each of the telephone calls made to Plaintiff's number by Defendant was

knowingly and willfully made in violation of the TCPA.

28.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

29.     Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

30.     Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

31.     Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

32.     Defendant has had numerous complaints against it from consumers across the country asking to not be called, however Defendant continues to call these individuals.

33.     Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

34.     Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

35.     From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

36.     From each and every call without express consent placed by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's call.

37.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

38.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

39.     Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

40.     Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone where a voice message was left unnecessarily occupied space in Plaintiff's phone or network.

41.     Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular telephone and his cellular telephone services.

42.     As a result of the answered and unanswered calls described above, Plaintiff suffered an invasion of privacy, the intrusion upon his right of seclusion, nuisance and annoyance. Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress, and aggravation. Due to both answered and unanswered calls, Plaintiff suffered the expenditure of Plaintiff's time, exhaustion of Plaintiff's cellular telephone battery, unavailability of Plaintiff's cellular telephone while ringing, trespass upon Plaintiff's chattels, and where a voice message was left, unnecessarily occupied space in Plaintiff's phone or network. All of the abovementioned were caused by, and directly related to, Defendant's attempts to call Plaintiff through the use of an automatic telephone dialing system or artificial voice or prerecorded message.

## COUNT I
### (Violation of the TCPA)

43.     Plaintiff fully incorporates and realleges paragraphs one through forty-two
(1-42) as if fully set forth herein.

44.     Defendant knowingly and willfully violated the TCPA with respect to
Plaintiff, specifically for each of the autodialer calls made to Plaintiff's cellular telephone
after Plaintiff notified Defendant that Plaintiff wished for the calls to stop.

45.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's
cellular telephone using an automatic telephone dialing system or prerecorded or artificial
voice without Plaintiff's prior express consent in violation of federal law, including 47
U.S.C § 227(b)(1)(A)(iii).

## COUNT II
### (Invasion of Privacy - Intrusion of Seclusion)

46.     Plaintiff fully incorporates and realleges paragraphs one through forty-five
(1-45) as if fully set forth herein.

47.     Defendant engaged in a campaign to harass Plaintiff by repeatedly calling
him after he told Defendant that he did not want Defendant to call him.

48.     The approximately 100 telephone calls that Defendant made to Plaintiff
after he told Defendant to stop calling him were a wrongful intrusion into Plaintiff's
seclusion and private affairs and done in such a manner as to be highly offensive to a
reasonable person.

49.     As a direct and proximate result of the telephone calls, Plaintiff suffered damages including mental distress, inconvenience, outrage, anger, aggravation, frustration, and anxiety.

50.     Defendant's conduct was outrageous, done with malice, and constitutes willful and wanton misconduct.

51.     Plaintiff is entitled to compensatory damages for Defendant's intrusion upon Plaintiff's seclusion.

52.     Due to the outrageous conduct, malice and willful and wanton misconduct of Defendant's intrusion upon Plaintiffs' seclusion, an award of punitive damages in favor of Plaintiff and against Defendant is appropriate to punish Defendant and deter others.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Zachary Lebo requests that the Court grant the following relief:

(a) An order barring Defendant from committing further violations of the TCPA against Plaintiff pursuant to 47 U.S.C. § 227;

(b) Awarding Plaintiff his actual damages as proved at the trial of this matter or statutory damages of up to $500 for each violation, whichever is greater, pursuant to 47 U.S.C. § 227;

(c) Awarding Plaintiff treble damages for willful or knowing violations of the TCPA pursuant to 47 U.S.C. § 227;

(d) Awarding Plaintiff compensatory and punitive damages for Defendant's intrusion of seclusion;

(e) An appropriate award of pre- and post-judgment interest on all damages;

(f) An award of costs, expenses and attorney fees incurred; and

(g) Granting such other and further relief as the Court deems just, proper and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Zachary Lebo demands a jury trial in this case on all issues so triable.

Respectfully submitted this _2ⁿᵈ_ day of _February_, 2018.

Attorney for Plaintiff

Clyde Hutchins, Bar No. 6-3549
Harmony Law, LLC
155 E. Boardwalk Drive, Suite 400
Fort Collins, CO 80525
Telephone: 970-488-1857
hutchins@harmony.law

## CERTIFICATE OF SERVICE

I hereby certify that on ___February 2nd___, 2018, I submitted the foregoing First Amended Complaint to the Clerk of Court for filing, and served the foregoing on Defendant by sending it postage prepaid to the following:


Attorney for Defendant Navient Solutions, LLC
Jeffrey M. Boldt
THE KUKER GROUP LLP
Attorneys at Law
508 East Eighteenth Street
Cheyenne, Wyoming 82001

_____